**Frank H. McWHIRTER,**
**Plaintiff/Appellee,**

v.

**Mary Ellen KIMBRO and Aetna Casualty and Surety Company, Defendants/Appellants.**

Supreme Court of Tennessee,
at Nashville.

Dec. 7, 1987.

Rehearing Denied Dec. 28, 1987.

Michael M. Castellarin, William C. Moody, Nashville, for defendants/appellants.

Gwynn K. Smith, Philip C. Kelly, Harsh, Kelly & Smith, Gallatin, for plaintiff/appellee.

## OPINION

FONES, Justice.

In this worker's compensation case the chancellor found that plaintiff's injuries arose out of and in the course of his employment with an air conditioning company. The chancellor awarded plaintiff medical expenses, temporary total disability benefits, and benefits based upon a finding that plaintiff incurred a fifty percent permanent partial disability of the body as a whole because of the accident.

The issues presented on this appeal are (1) whether the trial court erred in finding that plaintiff was working within the scope of his employment with defendant's air conditioning business at the time of his injury; and (2) whether the trial court erred in awarding plaintiff compensation for permanent partial disability to the body as a whole.

Plaintiff, Frank H. McWhirter, was hired by defendant, Mary Ellen Kimbro, in March 1984 to do some remodeling work on defendant's home, and also to help with the work on defendant's farm. In addition, plaintiff acted as a helper in defendant's heating and air conditioning business. Plaintiff usually received his work assignments from defendant's husband, Bobby W. Kimbro, who was the manager of the air conditioning business and plaintiff was paid by defendant at the same rate regardless of the tasks that he had performed during that particular pay period.

On 8 August 1984, plaintiff was injured as he prepared to bushhog defendant's pasture. Plaintiff fractured his lower left leg at the knee joint when he jumped off the tractor to engage the bushhog. Plaintiff was taken to the hospital, and surgery was performed to put the bone back in place. Two large metal screws were then placed in the bone to hold it in place. Following this procedure, plaintiff was confined to the hospital for twelve days. Plaintiff was later hospitalized for seven days when a

blood clot developed as a result of this surgery.

Subsequently, defendant refused to pay worker's compensation benefits on the ground that plaintiff was an agricultural employee at the time of the injury. Plaintiff filed suit for worker's compensation benefits against defendant and her insurer, Aetna Casualty and Surety Company.

At trial, plaintiff testified that during the period that he was employed by defendant he made fifteen to twenty-five service calls in connection with the air conditioning business. Plaintiff estimated that fifty-five percent of the work he performed for defendant from March 1984 until the injury in August 1984 was in connection with the air conditioning service. The remaining forty-five percent of the work performed during this period involved remodeling the house and work on the farm. Defendant admitted that plaintiff did, in fact, perform some work for the air conditioning business, but stated that this was extremely rare. Mr. Kimbro testified that plaintiff helped him on a few occasions when plaintiff happened to be in the truck.

On the issue of disability, Dr. Norman Sims testified that plaintiff has a diminished range of motion because of the injury from zero to between one hundred and ten and one hundred and fifteen degrees flexion. In addition, Dr. Sims stated that plaintiff has developed post-traumatic arthritis as a result of the injury. According to Dr. Sims, this arthritis prevented the fracture from healing optimally, and it will further prevent plaintiff from ever regaining his full range of motion. In addition, this injury will cause plaintiff to have difficulty walking for long distances, climbing stairs and squatting. Dr. Sims also stated that any type of athletic activity or running would not be possible for plaintiff. Dr. Sims concluded his testimony by opining, based on the American Medical Association guidelines, that plaintiff had incurred a ten percent permanent partial disability to the body as a whole as a result of the accident.

Plaintiff testified that he is a sixty-five year old man with a third grade education. He stated that since the Second World War his employment has mainly consisted of outdoor work. Prior to the accident, plaintiff performed construction work, though he had also worked as a farm laborer. Plaintiff then stated that since the accident he had been unable to climb ladders or scaffolds. In addition, plaintiff also stated that he could not climb steps or ramps, or even walk on uneven surfaces, without the assistance of a stick. Plaintiff stated that his uninjured leg had been hurting since the accident. He opined that this pain is due to the additional weight the uninjured leg must carry because of his injury. Plaintiff's wife testified that plaintiff had trouble walking because of the pain in both legs, and she testified that plaintiff had difficulty getting out of chairs. Plaintiff's daughter, Brenda Woodward, testified that plaintiff had trouble getting out of the bed in the morning. She stated that plaintiff could not climb ladders or get down on his knees as he once could and she stated that it was difficult and painful for plaintiff to stand on his feet for long periods of time.

The chancellor found that plaintiff spent the majority of his time doing work for defendant's air conditioning business. He then found that plaintiff was acting in the course of his employment with the air conditioning business when he was injured. Based on the medical and lay testimony, the chancellor concluded that plaintiff had suffered a fifty percent permanent partial disability to the body as a whole as a result of the accident. The chancellor awarded plaintiff his medical expenses, temporary total disability benefits, and permanent partial disability benefits.

As this cause of action arose before 1 July 1985, review by this Court on this appeal is limited by the material evidence rule. *Alley v. Consolidation Coal Co.*, 699 S.W.2d 147 (Tenn.1985).

■ On appeal, defendant first contends that at the time of the accident causing injury, plaintiff was an agricultural laborer, and therefore was not covered by the Tennessee Worker's Compensation Act. T.C.A. § 50–6–106(3). Defendant notes that plaintiff was originally hired to perform farm labor, and was in fact injured

while performing farm tasks. Defendant argues that any contact that plaintiff may have had with the air conditioning business was not sufficient to change plaintiff's status as a farm laborer.

This Court addressed the question of whether a laborer is an agricultural employee for worker's compensation purposes in *Ginn v. Forest Nursery Co.*, 165 Tenn. 9, 52 S.W.2d 141 (1932). In *Ginn*, this Court stated:

> "Whether a laborer is or is not a farm laborer is determined from the character of the work he is required to perform." (citation omitted.) . . . .

> "Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to, to determine whether he is a farm laborer." (citation omitted.)

*Id.* at 13, 52 S.W.2d at 142.

In a case of a similar nature, *Sharp v. Jenkins*, 211 Tenn. 691, 367 S.W.2d 464 (1963), this Court noted several factors that appear relevant to the determination of the "whole character" of the employment. In *Sharp*, the issue was whether a laborer at a lumber yard was acting in the scope of his employment at the lumber yard when he was hurt while mowing the owner's home lawn. The owner contended that the worker was in fact acting as a domestic worker when he was injured, and thus was not covered by the Tennessee Worker's Compensation Act. This Court affirmed the trial court's finding that the employee was acting in the course of his employment when he was injured, though the tasks that he was performing at the time of his injury were in fact domestic work. Some of the factors cited by this Court in its decision were:

> 1. The employee's duties were not definitely defined, but he was to carry out the orders of the owner;

> 2. There was no separation of wages for the hours worked on the home and on the job;

> 3. The employee had only one employer whose directions he was to follow;

> 4. The employee was originally hired as a handyman to work in the yard.

*Id.* at 700–01, 367 S.W.2d at 468.

In the present case, plaintiff worked for only one employer, defendant. His wages were not separated on the basis of the time he spent engaged in his different assignments, and his duties were not definitely defined. Finally, plaintiff testified that he spent about fifty-five percent of his time on jobs related to the air conditioning business. We cannot say on this record that there is not material evidence to support the finding of the chancellor that at the time of the injury, plaintiff was acting in the scope of his employment with defendant's air conditioning business.

■ The next issue argued by defendant on appeal is that the chancellor erred in his award of disability to the body as a whole when the injury was clearly to a scheduled member, the leg. T.C.A. § 50–6–207(3)(A)(ii).

The Tennessee Worker's Compensation Act specifically provides:

> The benefits provided by this paragraph [based on percentage of disability as a whole] shall not be awarded in any case where benefits for a specific loss are otherwise provided in this chapter.

T.C.A. § 50–6–207(3)(F). This Court has stated that when the Legislature has specifically provided for compensation for an injury with scheduled benefits, this Court must assume that the Legislature was aware of the "pain, suffering, etc." normally associated with the injury. *Murray Ohio Manufacturing Co. v. Yarber*, 223 Tenn. 404, 410, 446 S.W.2d 256, 258 (1969). However, in *Riley v. Aetna Casualty and Surety*, 729 S.W.2d 81, 84 (Tenn.1987), this Court also held:

> [I]f an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such extent as to result in permanent [total or partial] disability, a recovery may be had therefor. . . . In such case, the injury is general and not confined to the specific member. (citation omitted.)

In *Riley*, the employee incurred a work related injury to her heel which resulted in a thirty-five percent permanent partial disability to her foot, a scheduled member. This employee developed a limp because of her injury, and the limp caused her to experienced back problems. The doctor rated the employee as having a ten percent permanent partial disability to the body as a whole because of her injuries. Despite the fact that the actual injury was to a scheduled member, this Court affirmed the trial court's finding that plaintiff had incurred a disability to the body as a whole, because the evidence showed that the injury was not confined to the scheduled member.

The present case is clearly controlled by *Riley*. The testimony shows that plaintiff suffers pain in his right leg because of the weakened condition of plaintiff's left leg. In addition, Dr. Sims rated plaintiff as having a ten percent permanent partial disability to the body as a whole. We cannot say that there is not material evidence to support the trial court's finding that plaintiff's injury is not confined to the scheduled member.

The judgment of the trial court is affirmed. Costs are adjudged against defendants.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.

OPINION ON PETITION TO REHEAR

Appellants, Mary Ellen Kimbro and Aetna Casualty and Surety Company, have filed a petition to rehear which has been considered by the Court and found to be without merit.

The petition is denied. Costs are adjudged against defendant.